**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: October 1 2012**

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 08-35508 |
| | ) | |
| GOE Lima, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 09-3204 |
| | ) | |
| GOE Lima, LLC, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Ohio Farmers Insurance Company, | ) | |
| | ) | |
| Defendant and Third | ) | |
| Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Smith-Boughan, Inc., | ) | |
| | ) | |
| Third Party Defendant. | ) | |

### <u>MEMORANDUM OF DECISION REGARDING</u><br><u>MOTION TO STAY PENDING ARBITRATION</u>

This adversary proceeding is before the court on a motion brought under 9 U.S.C. § 3 to stay this

proceeding pending arbitration ("Motion ") [Doc. # 81] filed by intervenor PEA (Lit) ("PEA"), Defendant

Ohio Farmers Insurance Company's ("OFIC") opposition [Doc. # 82], and PEA's reply [Doc. # 84]. PEA

has intervened as of right in this proceeding to protect its interest pursuant to an assignment by Plaintiff/ Debtor GOE Lima, LLC ("GOE") of claims under a performance bond issued by OFIC, which assignment, as discussed below, is challenged by OFIC. The court held a hearing on the motion at which attorneys for PEA and OFIC appeared in person. Having considered the parties' briefs and the arguments of counsel, for the reasons that follow, PEA's motion to stay will be granted.

## BACKGROUND

The court has set forth the circumstances forming the basis of the complaint in this proceeding and events relating to this proceeding in previous opinions and summarizes those circumstances and events as reflected in the record thus far developed. The complaint is based upon a contract dispute between GOE, the debtor in the underlying Chapter 11 case, and Smith-Boughan, Inc. ("Smith-Boughan"). GOE and Smith-Boughan entered into a contract in 2006 for Smith-Boughan to provide certain mechanical services in connection with the construction of an ethanol facility on GOE's property in Lima, Ohio ("Construction Contract"). [*See* Doc. # 1, Complaint & attached Ex. A]. The Construction Contract incorporates by reference an agreement captioned "General Conditions of the Contract for Construction" ("General Conditions"). [*Id.*, attached Ex. B]. The General Conditions include the following provisions:

§ 4.6.2 INITIAL DISPUTE RESOLUTION. If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions the parties may endeavor to settle the dispute by mediation . . . . Either party may terminate the mediation at any time after the first session. . . .

§ 4.6.3 ARBITRATION

(*Paragraph deleted*)

§ 4.6.3.1 If a claim is not resolved through mediation, the sole remedy of any party to the mediation process shall be to make a written demand for binding arbitration. . . . Such arbitration shall be conducted by a panel of three arbitrators . . . in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties agree otherwise. . . .

(*Paragraph deleted*)

§ 4.6.3.2 The parties agree that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding.

[*Id.* at 28-29 (emphasis and italicized words in original)].

The General Conditions define the term "claim" as follows:

> A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract.

[*Id.* at 25, § 4.3.1]. The General Conditions defines "the Contract" as consisting of the Contract Documents, [*id.* at 11, § 1.1.2], which it further provides include the Construction Contract, the General Conditions, and other specified documents that do not include the Performance Bond that is at issue in this proceeding, [*id.* at 11, § 1.1.1 & Ex. A, Articles 1 & 9].

As required under the General Conditions, OFIC, as surety, and Smith-Boughan, as Contractor/principal, executed a Performance Bond for the benefit of GOE, referred to in the bond as "Owner." [*See id,* attached Ex. C]. The first paragraph of the Performance Bond incorporates by reference the underlying Construction Contract as follows:

> The Contractor and the Surety, jointly and severally bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

[*Id.*, ¶ 1]. The Performance Bond sets forth certain steps that GOE must take before OFIC's obligations under the bond arise.[1] [*Id.*, ¶ 3]. The Performance Bond provides, however, that "[n]o right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors." [*Id.* at ¶ 7]. It further provides that "[a]ny proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction . . . and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working. . ., whichever occurs first." [*Id.* at ¶ 9].

Disputes arose between GOE and Smith-Boughan. GOE terminated the Construction Contract on September 28, 2007. On October 14, 2008, GOE filed a voluntary petition for relief under Chapter 11 of

---

[1] The Performance Bond provides that

> If there is no Owner Default, the surety's obligation under this Bond shall arise after:
>
> 3.1 The Owner has notified the Contractor and the Surety . . . that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety . . . .
>
> 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. . . .
>
> 3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

[Doc. # 1, Complaint, ¶ 3 & Ex. C, ¶ 3].

3

the Bankruptcy Code. On January 30, 2009, Smith-Boughan commenced an adversary proceeding against GOE alleging, among other things, that GOE breached and wrongfully terminated the Construction Contract. [Adv. Pro. No. 09-3020, Doc. 1].[2] In its answer, GOE asserts a counterclaim for breach of contract. [*Id.*, Doc. # 22]. On September 1, 2009, that proceeding was stayed pending the completion of arbitration proceedings between GOE and Smith-Boughan pursuant to 9 U.S.C. § 3. [*Id.*, Doc. ## 39, 54 & 60].

On August 28, 2009, GOE commenced this adversary proceeding against OFIC, seeking judgment for damages allegedly caused by Smith-Boughan's breaches of the Construction Contract and for which OFIC is allegedly jointly and severally liable under the Performance Bond. OFIC filed a timely answer and third party complaint against Smith-Boughan for indemnification. [Doc. # 10]. In it answer, OFIC specifically denied GOE's averment that it has fulfilled conditions precedent to OFIC's obligations under the Performance Bond. [*Id.* at ¶ 15]. In its answer, OFIC avers that "all of the matters relating to performance under the contract between [GOE] and Smith-Boughan are to be determined in an arbitration which this Court has ordered to proceed and that, as a consequence, this action should be stayed until the ordered arbitration has been conducted." [*Id.* at ¶ 21]. On October 12, 2009, the parties filed a Stipulation, agreeing that this proceeding should be stayed pending completion of arbitration proceedings between GOE and Smith-Boughan in Adv. Pro. No. 09-3020 or further order of this court, [Doc. # 12], and the court entered an order to that effect on October 13, 2009, [Doc. # 14].

On October 18, 2010, OFIC filed a motion seeking relief from the court's order staying this proceeding for the limited purpose of filing, and the court deciding, a motion for summary judgment based upon its contention that GOE failed to perform conditions precedent to any obligation of OFIC under the Performance Bond. Although over a year had passed since this proceeding and Adv. Pro. No. 09-3020 had been stayed, an arbitration proceeding had not yet been commenced when the motion was filed. However, the contemplated arbitration was commenced on October 22, 2010, by PEA rather than GOE or Smith-Boughan.

During 2010, in GOE's underlying Chapter 11 case, GOE's First Amended Joint Plan of Liquidation ("Plan") had been confirmed. [Case No. 08-35508, Doc. # 612]. The Plan incorporated by reference a Settlement Agreement between, among others, PEA and GOE that the court had previously approved. [*Id.*

---

[2] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

4

& Doc. # 653]. The Plan and Settlement Agreement provide that GOE and the Liquidating Trust, created pursuant to the Plan, are deemed to have assigned to PEA, effective September 16, 2010, all of their rights, title and interest in the "Construction Claims," which include GOE's counterclaim against Smith-Boughan in Adv. Pro. No. 09-3020, as well as its claim against OFIC in this proceeding.[3] [*See id.*, Doc. # 612, Plan ¶ 7.8(a) and (b), and attached Ex. 2, Settlement Agreement, p. 5, ¶¶ 4 & 5].

PEA then filed an objection to OFIC's motion for relief from the court's order holding this case in abeyance pending arbitration and later filed a response to OFIC's status report regarding the arbitration proceeding.[4] [Doc. ## 32 & 54]. In addition, in response to OFIC's motion to strike the documents filed by PEA based on the fact that PEA was not a party in this proceeding, PEA filed a motion to intervene as of right as an interested party under Federal Rule of Civil Procedure 24(a). [*See* Doc. ## 58 & 60]. To be entitled to intervene as of right, PEA was required to demonstrate a substantial legal interest in the subject matter of this proceeding. *Blount-Hill v. Ohio*, 636 F.3d 278, 283 (6th Cir. 2011). Characterizing the Performance Bond provision that "[n]o right of action shall accrue on the Bond to any person or entity other than the Owner or its heirs, executors, administrators, or successors" as an anti-assignment clause, OFIC argued that the Performance Bond precludes assignment of GOE's claim against it. However, finding that the Ohio Supreme Court would apply the reasoning set forth in *Pilkington North America, Inc. v. Travelers Casualty & Surety Co.*, 112 Ohio St. 3d 482 (2006), and the Restatement of Law of Suretyship and Guaranty, this court concluded that where a right of action has already accrued, that is, where the obligee has taken all steps required for a duty to arise in the surety to perform under the terms of the bond, as GOE alleged in its complaint, the right of action is personal property of the obligee that may be assigned. [Doc. # 75, p. 11]. Although the court left for another day any factual findings regarding GOE's allegation that it had satisfied all conditions precedent to OFIC's duty to perform under the Performance Bond, the court found its allegation sufficient to support its finding that PEA's claimed interest in this proceeding entitled it to intervene as of right.[5]

---

[3] OFIC is not a creditor in GOE's Chapter 11 case and was not served notice of, and did not participate in, any of the hearings relating to approval of the Settlement Agreement or confirmation of the Plan in the bankruptcy case.

[4] In its status report, OFIC argued, among other things, that a right of action under the Performance Bond could not be assigned to PEA.

[5] In its Memorandum of Decision and Order granting PEA's motion to intervene, the court recognizes its use of language that may suggest that it made a factual determination regarding GOE's satisfaction of the conditions precedent to OFIC's duty to perform under the Performance Bond and the validity of the assignment of the Bond to PEA. However, no factual determination has been made. The court repeatedly qualified its statements referring to GOE's compliance with the conditions precedent with "*as alleged in the complaint.*" [*See* Doc. # 75, p. 3, 10, 11, 12]. The court simply addressed OFIC's argument

5

On March 19, 2012, the court entered an order granting PEA's motion to intervence. [Doc. # 75]. On that date, the court also entered an order granting OFIC's motion for relief from the court's October 13, 2009, order staying this proceeding pending completion of arbitration proceedings between Smith-Boughan and GOE. [Doc. # 77]. The court noted that it had not ordered the stay under the mandatory stay provision of the Federal Arbitration Act or its counterpart under Ohio law since there had been no application for a stay pending arbitration of the claims asserted in *this* proceeding. [*Id.* at 5]. Rather, the court had ordered the stay in the exercise of its inherent power to control its docket. [*Id.*]. However, the court found that although the same operative facts form the basis of GOE's claim in this proceeding as in the breach of contract claims asserted in Adv. Pro. No. 09-3020, additional facts relating to GOE's fulfillment of the conditions precedent to OFIC's liability under the Bond that must be determined in this proceeding are not relevant to the adversary proceeding between Smith-Boughan and GOE. And because there had been no request to stay this proceeding to permit arbitration of the claim asserted against OFIC in this proceeding, the court modified the October 13 order to permit OFIC to file, and the court to decide, a motion for summary judgment on issues relating to the conditions precedent to OFIC's liability under the Performance Bond.

On April 13, 2012, PEA then filed the instant Motion pursuant to 9 U.S.C. § 3 to stay this proceeding pending arbitration of the claim asserted against OFIC. On May 4, 2012, OFIC filed its motion for summary judgment and on May 18, 2012, PEA filed a memorandum in opposition to OFIC's motion for summary judgment.

## LAW AND ANALYSIS

As stated above, PEA seeks an order staying this proceeding pending arbitration of the Performance Bond claim asserted against OFIC and any defenses to that claim. PEA argues that the arbitration provision in the Construction Contract, which is incorporated by reference in the Performance Bond, mandates arbitration of not only the Construction Contract claims but all claims and defenses arising under the Performance Bond. OFIC, on the other hand, argues that there was no agreement by it to arbitrate unique defenses that arise under the Performance Bond itself.[6] OFIC also argues that, to determine the existence

___

that the "anti-assignment" provision of the Performance Bond categorically precluded PEA's interest under the Bond as an assignee and found that it did not if, *as alleged* by GOE, the right of action had already accrued to GOE at the time of the assignment. Thus, the court found that PEA claims a sufficient interest in the subject matter of this proceeding for intervention as a matter of right.

[6] This argument was raised at oral argument in response to the issues to be addressed at the hearing as set forth by the court in its order setting PEA's Motion for hearing.

6

of any agreement to arbitrate, the court must first rule on its motion for summary judgment, which raises issues relating to the fulfillment of the conditions precedent to its liability under the Performance Bond and, thus, to the validity of the claimed assignment of the bond claim by GOE to PEA. Finally, OFIC argues that even if there is an agreement to arbitrate, GOE and PEA waived any right they may have had under such agreement.

For the reasons that follow, the court agrees that OFIC did not agree to arbitrate unique defenses that arise solely under the Performance Bond but nevertheless concludes that issues referrable to arbitration include, among other things, the arbitrability of OFIC's challenge to the existence of the arbitration agreement, *i.e.* the issue of whether GOE fulfilled the conditions precedent to OFIC's liability such that the assignment of the claim to PEA was valid. The court further concludes that neither GOE nor PEA have waived any right they may have to arbitrate.

## I. Applicable Law

The parties disagree on whether state law or federal law applies in deciding PEA's Motion. According to OFIC, Ohio law applies because the parties to both the underlying Construction Contract (GOE and Smith-Boughan) and the Performance Bond (GOE and OFIC) are all Ohio companies, both the Performance Bond and the Construction Contract were entered into in Ohio, and the construction project was located in Ohio. PEA argues that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") applies because the construction project involves interstate commerce. Notwithstanding this disagreement, the parties agree that substantively the outcome is the same regardless of whether federal law or state law is applied.[7] Nevertheless, the court agrees with PEA that federal law applies.

The effect of the FAA "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 3. Thus, contracts "involving commerce" are covered by the FAA, which the Supreme Court has explained preempts conflicting state arbitration law. *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 271-72 (1995) (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984), for the proposition that Congress would not have wanted state and federal courts to reach different

---

[7] The parties further agree that any difference in federal law and state law relates to whether the court's decision will be considered a final appealable order.

outcomes about the validity of arbitration in similar cases).

In *Allied-Bruce Terminix Co.,* the Supreme Court construed the term "involving commerce" as the functional equivalent of "affecting commerce," which the court stated "signals Congress' intent to exercise its Commerce Clause powers to the full." *Id.* at 273. The Court has found that the FAA applies not only to contracts evidencing transactions that involve "persons or activities *within the flow* of interstate commerce," but also to contracts evidencing transactions relating to interstate commerce. *Id.* at 273-74 (emphasis in original) (citing H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)). A transaction relates to interstate commerce if it has a substantial effect on interstate commerce. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, – S.Ct. –, 2012 WL 2427810, *15 (June 28, 2012); *Wickard v. Filburn*, 317 U.S. 111, 125 (1942) ("[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce and this irrespective of whether such effect is what might at some earlier time have been defined as 'direct' or 'indirect.'").

In this case, the relevant contract is the Performance Bond, which incorporates by reference, and guarantees performance under, the Construction Contract. The Construction Contract was entered into for the purpose of constructing an ethanol production facility in Lima, Ohio ("the Project"). Although, as OFIC asserts, the signatories to the Construction Contract (GOE and Smith-Boughan) are both Ohio companies, the Contract describes the Project parties as including, among others, a construction manager identified as a Missouri company, a process engineer identified as a Florida company, and an independent engineer representing the interests of the financing parties and identified as a Massachusetts company, all of whom are scheduled as creditors of GOE its underlying Chapter 11 case.[8] [Doc. # 1, Ex. B, p. 1 & § 1.1.8; Case No. 08-35508, Doc. # 120, Sched. F]. Moreover the purpose of the ethanol production facility was to produce ethanol, which GOE entered into contracts to sell in interstate commerce. [*See* Case No. 08-35508, Schedule G - Executory Contracts (listing contract for sale of ethanol produced by GOE to BP Products N.A., Inc., in Illinois)]. On these facts, the court finds that the Performance Bond constitutes a transaction that is related to interstate commerce such that federal substantive law of arbitrability applies in determining PEA's Motion.

## II. Agreement to Arbitrate

PEA's Motion is brought under section 3 of the FAA, which provides as follows:

---

[8] GOE scheduled debt owed to Alberici Constructors, Inc., the construction manager, Benchmark Design, Inc, the Process Engineer, and R.W. Beck, the independent engineer, in the total amount of $797,350.71.

8

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Under this provision, the court must first determine whether the issues involved in this proceeding are referable to arbitration. The parties' arguments raise two issues in this regard: (1) whether any agreement to arbitrate between OFIC and PEA exists and (2) if an agreement exists, whether the agreement requires arbitration of issues that arise only under the Performance Bond, specifically, the conditions precedent to OFIC's liability under the bond. Both of these issues raise "question[s] of arbitrability" that are issues generally for the court to decide "unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter"). Thus, a threshold issue that the court must determine is who should decide the questions of arbitrability raised by the parties, the court or an arbitrator, where, as is the case here, the relevant arbitration provision incorporates the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA").

In this case, the relevant arbitration agreement is the arbitration provision in the Construction Contract, which is incorporated by reference in the Performance Bond. That arbitration provision in turn explicitly incorporates the AAA rules. Rule 9 of the AAA Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." [Doc. # 66, Ex. 1, p.14]. Although the Sixth Circuit has not ruled on the issue, district courts in this circuit and other circuit courts of appeal have held that incorporation into an arbitration agreement of the AAA rules or similar rules stating that the arbitrator has authority to determine his or her own jurisdiction constitutes a sufficiently clear delegation of power to the arbitrator. *See, e.g., Contec Corp. v. Remote Solution Co., Ltd.,* 398 F.3d 205, 211 (2nd Cir. 2005) (holding that incorporation of the AAA rules "serves as clear and unmistakable evidence of the parties' intent to delegate [issues of arbitrability] to an arbitrator"); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (same); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989) (finding arbitrator should decide whether a valid arbitration agreement exists where parties agreed to have all disputes resolved according to the Rules of the International Chamber of Commerce); *Morsey Constructors,*

*LLC v. Burns and Roe Enter., Inc.*, No. 5:08-CV-23-R, 2008 WL 3833588, at *4 (W.D. Ky. Aug. 13, 2008); *Bowden v. Delta T Corp.*, No. 06-345-JBC, 2006 WL 3412307, at *7, 2006 U.S. Dist. LEXIS 85727, at *20 (E.D. Ky. Nov. 27, 2006); *Book Depot P'ship v. Am. Book Co.*, No. 3:05-CV-163, 2005 WL 1513155, at *3, 2005 U.S. Dist. LEXIS 33782, at *8-9 (E.D. Tenn. June 24, 2005). The court agrees that where, as here, sophisticated commercial entities incorporate into their arbitration agreement rules that delegate authority to an arbitrator to determine questions of arbitrability, the incorporation of the rules constitutes a clear and unmistakable delegation of such power.

Nevertheless, the Sixth Circuit has explained that even where the arbitration agreement delegates the power to determine questions of arbitrability to the arbitrator, this delegation is not unlimited. *Turi v. Main St. Adoption Services LLP*, 633 F.3d 496, 507 (6th Cir. 2011). The court must make a threshold determination as to whether a *prima facie* agreement to arbitrate exists and, if so, whether the dispute at least arguably falls within the contemplated scope of the agreement. *Id.* (citing *Apollo Computer Inc.*, 886 F.2d at 473 (holding that the parties' delegation to the arbitrator of decisions regarding arbitrability applies only where "a *prima facie* agreement to arbitrate" exists) and *Bishop v. Gosiger, Inc.*, 692 F. Supp. 3d 762, 770 (E.D. Mich. 2010) (holding that because "Bishop's claims *arguably* fall within the contemplated scope" of the contract containing the arbitration agreement, the arbitrator had the authority to decide whether the arbitration agreement covered the claims at issue (emphasis added)).

**A. *Prima Facie* Agreement**

As stated above, the relevant arbitration agreement in this proceeding is the arbitration provision in the Construction Contract, which is incorporated by reference in the Performance Bond, an agreement entered into by OFIC for the benefit of GOE. The Sixth Circuit has held that a surety is bound by an arbitration agreement in an underlying contract that is specifically incorporated by reference in the surety bond. *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984). PEA asserts that GOE's claims under the Performance Bond, including its rights under the arbitration provision of the Construction Contract incorporated therein, have been assigned to it pursuant to GOE's confirmed Chapter 11 Plan. Although OFIC disputes the validity of the assignment,[9] the confirmed Plan and the Settlement Agreement incorporated therein provide that GOE's claims under the Bond were assigned to PEA, effective September 16, 2010. The court finds, therefore, that a *prima facie* agreement to arbitrate does exist.

_____

[9] In a prior opinion, the court addressed at length the circumstance under which the assignment of the Performance Bond would be valid. [Doc. # 75, pp. 7-12]. The court found that if GOE had complied with all of the conditions precedent to OFIC's duty to perform under the Bond as alleged in the Complaint such that a right of action had already accrued to GOE, the assignment to PEA thereafter would not violate the "anti-assignment" clause in the Bond. [*Id.* at 11-12].

10

## B.  Scope of the Arbitration Agreement

The court next considers whether the issues before it at least arguably fall within the contemplated scope of the alleged arbitration agreement.  The two issues presented in this proceeding and that PEA is pursuing are whether Smith-Boughan breached the Construction Contract and  whether GOE complied with all of the conditions precedent to OFIC's duty to perform under the terms of the Performance Bond.  OFIC has asked the court to decide only the issue of GOE's compliance with the conditions precedent, while PEA seeks an order staying the entire proceeding pending arbitration of the Bond claim presented in this proceeding.[10]

The Sixth Circuit has distinguished between general arbitration provisions that cover every dispute arising out of the parties' agreement and more narrowly drawn arbitration agreements.  *Turi*, 633 F.3d at 507-09.  In *Turi*, the court explained that "[t]his distinction is significant because the FAA's presumption of arbitrability regarding the merits of a dispute does not apply with equal force to narrow arbitration agreements."  *Id.* at 507.  This is so because "no matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'"  *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005).  Thus, "[w]here an arbitration provision 'by its terms extends only to a specific type of dispute, then a court cannot require arbitration [of] claims that are not included' in the arbitration agreement."  *Turi*, 633 F.3d  at 507; *Simon*, 398 F.3d at 775 ("This Court has drawn a clear line between the extensive applicability of general arbitration provisions and the more narrow applicability of arbitration clauses tied to specific disputes.").

In this case, PEA argues that issues relating to the Bond claim are subject to arbitration because the arbitration provision in the Construction Contract covers "*all* claims arising in connection with the Contract and Bond." [Doc. # 84, pp. 3-4 (emphasis added)].  In support of its argument, PEA cites the Sixth Circuit opinion in *Haskell Company*.  In *Haskell Company,* a general contract containing an arbitration provision that "[a]ll claims, disputes and other matters in question arising out of, or relating to this contract" was incorporated by reference in a subcontract, which was in turn incorporated by reference in the performance bond under which a claim had been made.  *Haskell Co.*, 742 F.2d at 275-76.  The Sixth Circuit  rejected in *Haskell Company* the same argument OFIC makes here  that it cannot be compelled to arbitrate because it

---

[10] The court again emphasizes that this proceeding was previously stayed pending completion of arbitration proceedings between GOE and Smith-Boughan in Adv. Pro. No. 09-3020.  It was not stayed pending arbitration of the Bond claim asserted against OFIC in this proceeding.

11

was not a signatory to the general contract, finding the arbitration agreement had been incorporated by reference in the bond. *Id.* The arbitrability of surety defenses arising solely under the bond was not an issue addressed in *Haskell Company*. However, other courts have found that a general arbitration provision that all disputes "arising out of or relating to" the contract that is incorporated in a bond requires arbitration of such defenses. *See U.S. Surety Co. v. Hanover R.S. Ltd. P'ship*, 543 F. Supp. 2d 492, 495-96 (W.D.N.C. 2008) (explaining that "[t]he test for an arbitration clause of this breadth is not whether a claim arose under one agreement or another, but whether a significant relationship exists between the claim and the agreement containing the arbitration clause" and quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93-95 (4th Cir. 1996)); *Ohio Cas. Ins. Co. v. City of Moberly*, No. 4:05CV5, 2005 WL 2491461, 2005 U.S. Dist. LEXIS 43325 (E.D. Mo. 2005) (holding that surety on bond incorporating arbitration clause with "arising out of or relating to the Contract Documents" language and defining "Contact Documents" to include the performance bond was obligated to arbitrate all of its defenses, specifically including its so-called "personal defenses" under the bond); *Jewish Fed'n of Greater New Orleans v. Fid. & Deposit Co. of Md.*, 273 F.3d 1094 (Table) (5th Cir. 2001) (citing cases finding similar arbitration clauses broad and capable of expansive reach and concluding that the surety's defense under the performance bond was a "controversy ... related to the Contract"). *But see, e.g.*, *Great Am. Ins. Co. v. Hinkle Contr. Corp.*, 826 F. Supp. 2d 969 (S.D. W. Va. 2011)(notes and applies holding of what it characterizes as the better view of cases that incorporation by reference provision did not require arbitration of disputes originating in the provisions of the bond).

PEA characterizes the Construction Contract as including a similar general arbitration provision. Specifically, PEA relies on the Construction Contract's broad language addressing the initial dispute resolution process, which is effective "[i]f *a dispute* arises out of or relates to this Agreement or its breach." [Doc. # 1, Ex. B, ¶ 4.6.2 (emphasis added)]. Under this provision, parties to such a dispute must attempt to settle the dispute "first through direct discussion" and, if unsuccessful, they may attempt to resolve their dispute through mediation, which under this provision is a prerequisite to arbitration. [*Id.*]. By contrast, the arbitration agreement provides that "if a *claim* is not resolved through mediation, the sole remedy of any party to the mediation process shall be to make a written demand for binding arbitration. . . ." [Doc. # 1, Ex. B, ¶ 4.6.3.1 (emphasis added)]. It does not include the broader "arises out of or relates to" language found in paragraph 4.6.2. Thus, only "claims" are subject to the arbitration agreement. "Claim" is specifically defined in the General Conditions of the Construction Contract to include: (1) demands seeking "payment of money, extension of time or other relief with respect to the terms of *the Contract*", and (2) "other

12

disputes and matters in question *between the Owner and Contractor . . . .*" [*Id.* at ¶ 4.3.1].

Whether GOE complied with the conditions precedent set forth in the Performance Bond is not a dispute between the "Owner" and the "Contractor." Although as an assignee, PEA claims to stand in the shoes of GOE, identified in the Construction Contract as the "Owner," the Construction Contract identifies Smith-Boughan, not OFIC, as the "Contractor." It is also not a demand seeking relief with respect to the terms of the Construction Contract; rather, it relates to GOE's duties under the terms of the Performance Bond. The "Contract" is defined to include specific "Contract Documents" that do not include the Performance Bond. The court thus finds that defenses arising solely under the bond, such as the conditions precedent issue, are not even arguably "Claims" under the arbitration agreement. This finding, which permits such issues to be heard by a court, is consistent with the Performance Bond provision that "[a]ny proceeding, legal or equitable, under the Bond *may* be instituted in any court of competent jurisdiction," which would be rendered meaningless and with no effect if all issues arising under the bond are arbitrable. [Doc. # 1, Ex. C, ¶ 9; (emphasis added)]; *see State v. Bethel*, 110 Ohio St. 3d 416, 423 (2006) (stating the "basic principle of contract law" that a contract should be construed to "give effect, if possible, to every provision therein contained"); *cf. Developers Sur. & Indem. Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665 (D. Md. 2010)(notes apparent circuit split on incorporation issue and emphasizes material distinction between mandatory (must) and non-mandatory (may) language in bond provision regarding resolution of disputes in court).

Notwithstanding this determination, the court finds that the conditions precedent issue is nevertheless referable to arbitration. OFIC does not dispute that the scope of the arbitration agreement at least arguably includes the issue of whether Smith-Boughan breached the Construction Contract, a fact that must be shown in order to find OFIC liable under the Performance Bond. Breach of the Construction Contract is a Claim as defined in the General Conditions. However, OFIC may be bound by an arbitrator's decision on that issue only if the assignment of the Performance Bond (and thus the arbitration agreement incorporated therein) to PEA was a valid assignment in the first place.

This court has previously found that the assignment to PEA is valid only if GOE complied with the conditions precedent to OFIC's liability under the Performance Bond such that a right of action under the bond had accrued to GOE before the assignment. *See supra*, n.9. Whether GOE's rights under the arbitration agreement were validly assigned to PEA is an issue relating to the continued existence and validity of the *prima facie* agreement to arbitrate. *See Apollo Computer, Inc.*, 886 F.2d at 473. Under that agreement, OFIC agreed to arbitration pursuant to the AAA rules and, therefore, agreed to delegate to an

13

arbitrator the power to rule on objections with respect to the existence and validity of the arbitration agreement. Therefore, although the conditions precedent issue is not a "Claim" as defined for purposes of the arbitration agreement, it is nevertheless referable to arbitration as it relates to the continued existence and validity of the arbitration agreement, issues that OFIC agreed would be submitted to arbitration and that must be determined in order to rule on the breach of contract issue, which arguably is a Claim under the arbitration agreement.

In sum, the court finds a *prima facie* agreement to arbitrate exists and further finds that the issue of whether GOE complied with all conditions precedent to OFIC's liability under the Performance Bond at least arguably falls within the contemplated scope of the agreement in that it relates to the continued existence and validity of the arbitration agreement, which are issues that OFIC agreed to arbitrate. The court therefore finds that both issues presented in this proceeding, Smith-Boughan's alleged breach of contract and GOE's alleged compliance with the conditions precedent, are referable to arbitration.

## III. Waiver

OFIC argues that GOE waived any right to arbitration when it filed its complaint in this proceeding. It further argues that both GOE and PEA's participation in this proceeding waived their right to arbitrate. Besides arguing the merits of OFIC's waiver argument, PEA contends that the issue is one for the arbitrator, rather than the court, to decide. The court disagrees.

The Sixth Circuit has distinguished between a contractually-based waiver defense and a waiver defense based upon inconsistent litigation conduct as asserted here. *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 392-94 (6th Cir. 2008). In *JPD, Inc.*, the court explained that questions over arbitration procedures stipulated to in the contract that "grow out of the dispute and bear on its final disposition" and that include defenses to arbitration such as waiver or delay are presumptively for an arbitrator to decide. *Id.* at 392 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). However, joining the First and Third Circuits, the court held that a court, not the arbitrator, presumptively determines whether a party has waived its right to arbitrate based on conduct inconsistent with reliance on an arbitration agreement. *Id.* at 393 (citing *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217-18 (3rd Cir.2007); *Marie v. Allied Home Mortgage*, 402 F.3d 1, 13-14 (1st Cir.2005)).

While PEA acknowledges this general rule, it contends that Rule 9 of the AAA rules giving the arbitrator the power to decide his or her own jurisdiction requires arbitration of OFIC's waiver argument. However, OFIC's waiver argument, while a defense to arbitration, is not jurisdictional such that Rule 9 is implicated. *Cf. Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 695 (7th Cir. 2009)

(stating that "[a] person who having agreed to arbitrate instead brings a suit has broken his contract, and the breach can be pleaded as a defense to his suit" but that "even if the defense is sound, it no more deprives the court of jurisdiction than a defense based on any other contractual forum-selection clause would.").

Parties are free to waive their contractual right to arbitration. *Johnson Assoc. Corp. v. HL Operating Corp*, 680 F.3d 713, 717 (6th Cir. 2012). However, "[t]he strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns." *JPD, Inc.*, 539 F.3d at 393. The Sixth Circuit has explained that a party may waive an agreement to arbitrate by "(1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Johnson Assoc. Corp.*, 680 F.3d at 717 (citing *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010)). As discussed below, neither factor is present in this proceeding.

First, OFIC argues that GOE, and thus PEA to the extent it stands in the shoes of GOE, waived any right to arbitration when it filed the complaint in this court. GOE filed the complaint on August 28 2009, and counsel for GOE attended an initial pretrial conference on October 13, 2009. Before the pretrial conference, GOE and OFIC filed a stipulation agreeing to a stay of this proceeding pending arbitration of the breach of contract claim between GOE and Smith-Boughan in Case No. 09-3020, and the court entered an order to that effect on October 13, 2009. Thereafter, GOE's only participation in this proceeding was to file reports and attend hearings as ordered by this court in February, April and August 2010 regarding the status of any arbitration proceeding. GOE's conduct was not "completely inconsistent" with reliance on the arbitration agreement. In fact, it agreed to a stay very early in this proceeding, as did OFIC, to permit completion of arbitration proceedings with respect to the breach of contract issue, which is the basis of its claim under the Performance Bond in this proceeding.

Although at first blush the filing of a complaint may appear to be inconsistent conduct, the Performance Bond required that any court proceeding with respect to the bond be instituted within two years after a Contractor Default or within two years after the Contractor ceased working, whichever occurs first. GOE terminated the Construction Contract on September 28, 2007. At the hearing on PEA's instant Motion, OFIC conceded that GOE filed its complaint on August 28, 2009, believing it necessary to do so in order to protect its rights under the bond. As discussed earlier and as argued by OFIC, issues that are unique under the bond are generally not arbitrable under the terms of the arbitration agreement. On these facts, the court cannot say that GOE's filing of the complaint constitutes "completely inconsistent" conduct. *Cf. Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (stating that "waiver may not be

15

inferred from the fact that a party does not rely exclusively on the arbitration provisions of a contract, but attempts to meet all issues raised in litigation between it and another party to the agreement," and citing *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 929 (5th Cir. 1970) (finding right to arbitration was not waived where party was protecting its right to claim damages not subject to arbitration)).

Federal cases cited by OFIC do not require a different result.[11] OFIC cites *Worldsource Coil Coating, Inc. v. McGraw Construction Company, Inc*., 946 F.2d 473 (6th Cir. 1991), for the proposition that "unless authorized by contract, submission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party." In that case, the Sixth Circuit applied Illinois law, not federal law, noting that the parties' contract explicitly provided that arbitration shall be governed by Illinois law, the parties relied on Illinois law in the district court, the district court applied Illinois law, and no party contended that this was error. *See id.* at 476, n.3. Nevertheless, even if the holding in that case applies here, because some of the issues relating to GOE's claim under the Performance Bond are not subject to arbitration, filing its complaint in this proceeding was authorized under the bond.

OFIC also cites *Uwaydah v. Van Wert County Hospital*, 246 F. Supp. 2d 808 (N.D. Ohio 2002), in support of the proposition that "election to proceed in a nonarbitrable forum acts as a presumptive waiver of the right to arbitrate," which is the holding in *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995), cited by the district court in *Uwaydah*. *Uwaydah*, 246 F. Supp. 2d at 811. In *Cabinetree of Wisconsin*, the court emphasized that invoking the judicial process is *presumptively* a waiver of the party's right to arbitration and that there are situations "in which such invocation does not signify an intention to proceed in a court to the exclusion of arbitration." *Cabinetree of Wisconsin*, 50 F.3d at 390. The Seventh Circuit Court of Appeals set forth several examples of such situations, which this court finds applicable here: "There might be doubts about arbitrability, and fear that should the doubts be resolved adversely the statute of limitations might have run. Some issues might be arbitrable, and others not." *Id.* at 391. These situations were not an issue in *Uwaydah* as the district court found that the plaintiff had waived his right to arbitrate "by instituting *and* actively participating in this litigation and thereafter acting inconsistently with regard to any right to arbitrate he may have had." *Uwaydah*, 246 F. Supp. 2d at 810.

In this case, unlike the plaintiff in *Uwaydah*, GOE has not actively participated in this litigation other than providing status reports regarding the progress (or lack thereof) of arbitration proceedings since the

_____

[11] OFIC also cites several Ohio cases in support of its argument. However, the court has found that the law to be applied with respect to the arbitration agreement is federal law, not state law.

case was stayed shortly after it was commenced. In addition, the circumstances faced by GOE, namely, that all of the issues arising under the Performance Bond are not arbitrable and that a two-year limitation period under the terms of the Bond would have otherwise expired, rebut any presumption that its invocation of the judicial process signifies an intention to proceed in court to the exclusion of arbitration.

OFIC also argues that PEA's participation in this proceeding and delay in requesting arbitration has resulted in a waiver of any right it has under the Performance Bond to arbitrate. Initially, the court finds no prejudicial delay in PEA's request to stay this proceeding pending arbitration. As discussed above, this proceeding had already been stayed since October 13, 2009, and continued to be stayed until the court's order entered on March 19, 2012, granting OFIC relief from the October 13, 2009, order and permitting it to file a motion for summary judgment addressing the conditions precedent issue. On March 19, 2012, the court also granted PEA's motion to intervene in this proceeding. Its motion requesting the court to stay this proceeding pending arbitration was filed less than one month later on April 13, 2012. Although OFIC correctly states that the request was not made until nearly thirty-two months after GOE filed its complaint, this proceeding had been stayed shortly after the complaint was filed and, since October 13, 2009, it had been stayed for all but the twenty-five days before PEA filed its motion to stay pending arbitration.

The court further finds, with only two exceptions, that PEA's participation in this proceeding has been to protect any right it may have to arbitrate. The court notes that any rights PEA has under the bond were assigned effective September 16, 2010, and that PEA commenced an arbitration proceeding on October 22, 2010, while this proceeding was being held in abeyance. Thereafter, its initial involvement in this proceeding was solely in response to OFIC's motion for relief from the court's order holding the proceeding in abeyance and at hearings regarding the status of arbitration that were held by the court. PEA objected to OFIC's motion, arguing that all issues in this proceeding should be addressed in the arbitration proceeding that it had commenced. Thereafter, before the court ruled on OFIC's motion and while this proceeding was still being held in abeyance, PEA filed its motion to intervene and, after that motion was granted, the instant motion to stay pending arbitration.

The two exceptions noted above are PEA noticing and taking a deposition of an OFIC representative and its request for production of documents served on OFIC. [*See* Doc. 82, Ex. C & D]. However, the court does not find that such discovery conducted by PEA signifies an intention to proceed in court to the exclusion of arbitration and, thus, to waive any rights it may have to arbitrate. *See Cabinetree of Wisconsin*, 50 F.3d at 390. The court had entered an order permitting OFIC to file a motion for summary judgment, which it filed on May 4, 2012. As the court had not yet ruled on PEA's motion to stay pending arbitration,

PEA was required to conduct discovery in order to respond to OFIC's summary judgment motion, which response was due and filed on May 18, 2012. The discovery conducted by PEA was required in order to protect any rights it might have under the Performance Bond in the event that the court denied its motion to stay. It does not signify an intent to waive a right to arbitration. *See id.* at 390-91.

## CONCLUSION

For the foregoing reasons, the court finds that both issues presented in this proceeding, Smith-Boughan's alleged breach of the Construction Contract and GOE's compliance with the conditions precedent under the Performance Bond, are referable to arbitration. The court further finds that neither GOE nor PEA have waived any right to arbitrate that exists under the Performance Bond. As such, PEA's Motion to stay this proceeding brought under 9 U.S.C. § 3 will be granted and this proceeding will be held in abeyance pending completion of arbitration of these issues.

The court will enter a separate order in accordance with this memorandum of decision.

### ###